# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**KAREN MILNER**                                                                     **PLAINTIFF**

v.                                                                           **No. 5:22-cv-74-BJB**

**CHRISTINE E. WORMUTH,**                                       **DEFENDANT**
SECRETARY OF THE ARMY,
U.S. DEPARTMENT OF ARMY

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

      Fort Campbell—home of the famed 101st Airborne and many other soldiers and staff—bears a Kentucky postal address, but straddles the Tennessee border. In a lawsuit regarding actions that occurred on the base, does the federal venue statute give plaintiffs the option to parachute into court on either side of the state line? Karen Milner answers that yes, parties in this odd circumstance are like paratroopers, to paraphrase Major Richard Winters: "we're supposed to be surrounded" in odd or hostile places.[1] Alas, the venue statute says no.

      Milner sued the Secretary of the Army, Christine Wormuth, under Title VII of the Civil Rights Act for retaliation and gender-based discrimination and under the federal and Kentucky constitutions for wrongful termination in violation of public policy. Complaint (DN 1). Wormuth moved to dismiss on multiple grounds. Motion to Dismiss (DN 9).[2] In her view, the proper venue for the Title VII claims is the Middle District of Tennessee, so the Court should dismiss under Rule 12(b)(3) or transfer the case. *Id.* at 6–7. Because the venue statute simply speaks in terms of "states" and contains no exception for federal installations straddling interstate lines, venue is improper in this District. But especially given the geographical oddity of a cross-border base where military personnel get Kentucky mail despite working south

---

[1] *Band of Brothers*: *Crossroads* (Home Box Office 2001) (memorializing one Company of the 101st's preparation for and fight through Western Europe between 1942 and 1945).

[2] As to the wrongful-termination claim, Wormuth asserts the Court lacks jurisdiction because the Complaint doesn't come within the consent to suit provided by the Federal Tort Claims Act and alternatively, the Complaint fails to state a plausible claim under state law. MTD at 7–12. The Court previously dismissed the wrongful-termination claim, DN 14, rendering moot this aspect of the motion to dismiss.

of the border, the "interest of justice" favors transferring this case to the Middle District of Tennessee.

## I.

A defendant may move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). The plaintiff "bears the burden of showing that its initial choice of venue is proper." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-cv-108, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012). In resolving a 12(b)(3) motion, "[t]he Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

A special venue statute governs Title VII claims and requires plaintiffs to sue in one of these specified forums:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,
>
> [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or
>
> [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,
>
> [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). This statute "limit[s] venue in Title VII cases to those jurisdictions concerned with the alleged discrimination." *Bruce v. Esper*, No. 5:19-cv-37, 2020 WL 520598, at *2 (W.D. Ky. Jan. 31, 2020) (quoting *Darby v. United States Dept. of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002)).

## A.

Milner contends venue is proper under the first or second provision because the unlawful employment practice occurred in Kentucky and the employment records are likely maintained there. Response (DN 12) at 1.

She served as the director of the Army Community Service Program when the events underlying this lawsuit occurred. Compl. at 2–3. And according to the Complaint, those events "took place in Fort Campbell, *Kentucky*." *Id.* at 2 (emphasis added). But a sworn affidavit from Robert Brundage, Fort Campbell's Installation

2

Geospatial Information and Services Manager, attests that the building housing the Army Community Service Program is located in Montgomery County, Tennessee, which would fall within the Middle District of Tennessee. Brundage Affidavit (DN 9-1) ¶ 3. Brundage is "responsible for geospatially tracking the location of the existing Real Property infrastructure located in and about Fort Campbell, KY." ¶ 1. Using mapping software that manages the building locations in Fort Campbell, he determined that the building where Milner worked fell on the Tennessee side of Fort Campbell. ¶ 3.

Based on Brundage's unchallenged affidavit, "the unlawful employment practice" didn't occur in Kentucky. § 2000e-5(f)(3); *Bruce*, 2020 WL 520598 at *2 ("Hospital where [plaintiff] was employed is located in Montgomery County, Tennessee, even though it has a Kentucky mailing address"). Milner's Title VII allegations relate only to her work experiences with the Army Community Service Program—she never alleges employment with another program or in any other building. *See* Compl. at 2–7; Resp. at 2–4 (not contesting that her employment was solely with the Army Community Service Program). Nor does she contest the validity of Brundage's statement or supply an affidavit of her own. So the Middle District of Tennessee would be a proper venue for these claims, but this District is not.

Neither of Milner's counterarguments is availing. First she relies on the transfer order in *Nash v. McHugh*, No. 1:14-cv-68 (W.D. Ky. Nov. 19, 2014) (DN 12-1). Resp. at 2–3. In that one-page order, Judge McKinley transferred the *Nash* case to the Paducah Division of the Western District of Kentucky because "the conduct giving rise to the instant action allegedly occurred at Fort Campbell, which is located in the Paducah Division of this Court." DN 12-1. Contrary to Milner's implication, the Paducah Division of the Western District wasn't the case's last stop. Upon receiving the case, Judge Russell granted the defendant's motion and transferred the case from this District to the Middle District of Tennessee because venue wasn't proper here. *Nash v. McHugh*, No. 5:14-cv-209, 2015 WL 420222, at *3 (W.D. Ky. Jan. 30, 2015). That was in part because the plaintiff's work site was "technically located in the state of Tennessee," despite bearing a Kentucky address. *Id.*

Alternatively, Milner argues that venue is proper in either Kentucky or Tennessee because Fort Campbell "straddles both states but is not 'in' either state" under the venue statute. Resp. at 3. But Milner obviously treats Fort Campbell as "in" Kentucky for purposes of the venue statute. And that provision makes no exceptions for federal districts or military installations; it speaks in terms that respect rather than erase state and district lines. Milner cites no caselaw, and the Court is aware of none, supporting her reading of the statute: nothing indicating plaintiffs have a free option with respect to venue in these circumstances, much less that Kentucky could effectively annex Tennessee federal installations for judicial purposes (no matter how attractive that might prove to the geographically smaller northern neighbor). *Contra Bruce*, 2020 WL 520598 at *2; *Nash*, 2015 WL 420222 at *3; *Demery v. McHugh*, 959 F. Supp. 2d 5, 8 (D.D.C. 2013) (determining Title VII

3

venue with reference to the specific Army buildings rather than general locations). So the first provision is out.

## B.

What about the location where "the employment records relevant to such practice are maintained and administered"? § 2000e-5(f)(3). The Brundage Affidavit states that the Fort Campbell Civil Personnel Advisory Center, which houses employment records, is in Tennessee. Brundage Aff. ¶ 4. Milner concedes that she has "no means of disputing that allegation prior to discovery." Resp. at 4. So, under this second provision, the Middle District of Tennessee is proper, and this District is not. *Bruce*, 2020 WL 520598 at *2 (second provision inapplicable because "CPAC is also located in Montgomery County, Tennessee.").

As to the third and fourth provisions of the venue statute, Milner makes no attempt to argue either that she would have worked on the northern side of the state line "but for the alleged unlawful employment practice," nor that Wormuth "is not found within any such district" described in the statute. § 2000e-5(f)(3). Because she bears the burden to show that venue is proper, the Court cannot treat venue here as proper under either provision. *Sechel Holdings*, 2012 WL 3150087 at *2.

## II.

Would the "interest of justice" support transfer instead of dismissal? § 1406(a). Generally, the interest of justice favors transfer if a plaintiff had some "arguable basis for thinking that the action was properly brought in the district in which it was originally filed." *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009). Specifically, the Sixth Circuit has distinguished "a mistake resulting from 'the uncertainties of proper venue'" from "a complaint filed, deliberately or carelessly, in the wrong district." *Id.* at 458–59 (quoting *Goldlawr v. Heiman*, 369 U.S. 463, 467 (1962)). Other relevant factors include any prejudice resulting from dismissal, such as applicable statutes of limitations. *See Wallace v. Whitt*, 935 F.2d 271, 1991 WL 104246, at *1–2 (6th Cir. 1991).

Milner's fallback position seeks transfer rather than dismissal, Resp. at 4, and Wormuth doesn't oppose transfer, MTD at 7. While prejudice to the parties is neutral, Milner had an "arguable basis" for believing that venue would be proper here, given the confusion naturally associated with the Kentucky postal and political affiliations of parts of Fort Campbell geographically situated in Tennessee. *Stanifer*, 564 F.3d at 460; Brundage Aff. ¶ 3 ("Although Fort Campbell has a Kentucky mailing address…"). And other judges facing similar facts have also found that "transfer … would 'be in the interest of justice' under 28 U.S.C. § 1406(a)." *Bruce*, 2020 WL 520598 at *2; *Nash*, 2015 WL 420222 at *3. Given the lack of prejudice to Wormuth in transferring and the apparent good faith of Milner, the Court finds that the interest of justice favors transfer to the Middle District of Tennessee.

## ORDER

The Court partially grants Wormuth's motion (DN 9) and partially denies as moot the remaining arguments related to the previously dismissed claim. The Court transfers this case to the United States District Court for the Middle District of Tennessee.

Benjamin Beaton, District Judge
United States District Court

July 12, 2022